IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA

| | |
|---|---|
| UNITED STATES OF AMERICA )<br>)<br>v.           )<br>)<br>ALMANNY KAMARA        )<br>_____) | Cr. No. 06-020 (GK) |

**DEFENDANT'S MEMORANDUM IN AID OF SENTENCING**

Defendant, Almanny Kamara, through undersigned counsel, hereby respectfully submits this memorandum in aid of sentencing pursuant to Federal Rule of Criminal Procedure 32. Based on all the sentencing factors in this case, including the United States Sentencing Guidelines, Mr. Kamara respectfully asks the Court to sentence him to a period of incarceration of time served.

**BACKGROUND**

On December 21, 2005, Mr. Kamara was arrested in New York , where removal proceedings took place. Mr. Kamara was then transported to the District of Columbia and had his initial appearance on January 24, 2006. On March 8, 2006, Mr. Kamara pled guilty, in accordance with a written plea agreement, to False Statements in Application of a Passport in violation of 18 U.S.C. § 1542. He is scheduled to be sentenced on June 29, 2006.

**DISCUSSION**

**I.    THE POST-BOOKER SENTENCING FRAMEWORK.**

Under Justice Breyer's majority opinion in Booker, the "district courts, while not bound to apply the Guidelines, must consult those Guidelines and take them into account when sentencing. See 18 U.S.C. § 3553(a)(4)." United States v. Booker, 543 U.S. 220, 264 (2005)

1

(Breyer, J.). While holding that district courts should still consider the Guideline calculations and ranges for sentencing purposes, the remedial majority in Booker held that courts must consider all the purposes of sentencing set forth in 18 U.S.C. § 3553(a). Pursuant to Booker, therefore, courts must treat the Guidelines as but one, among several, sentencing factors.

Pursuant to 18 U.S.C. §§ 3562 and 3553(a)–which were explicitly endorsed by the Supreme Court in Booker–sentencing courts should consider the need for the sentence imposed:

> (A) to reflect the seriousness of the offense, to promote respect for the law, and to provide just punishment for the offense;
>
> (B) to afford adequate deterrence to criminal conduct;
>
> (C) to protect the public from further crimes of the defendant; and
>
> (D) to provide the defendant with the needed educational and vocational training, medical care, or other correctional treatment in the most effective manner.

Specifically, courts should "impose a sentence sufficient, but not greater than necessary, to comply with the purposes" set forth above.

Section 3553(a) further directs sentencing courts to consider the nature and circumstances of the offense, the history and characteristics of the defendant, the range of sentences available, the need to avoid unwanted sentencing disparities among defendants with similar records who have been found guilty of similar conduct, and the need to provide restitution to any victims of the offenses charged.

Pursuant to 18 U.S.C. § 3661, also expressly endorsed by the Booker majority:

No limitation shall be placed on the information concerning the background, character,

and conduct of a person convicted of an offense which a court of the United States may receive and consider for the purposes of imposing an appropriate sentence.

Section 3582 of Title 18 states that:

[t]he court, in determining whether to impose a sentence of imprisonment, and, if a term of imprisonment is to be imposed, in determining the length of the term, shall consider the factors set forth in Section 3553(a) to the extent that they are applicable, recognizing that imprisonment is not an appropriate means of promoting correction and rehabilitation.

Taken together, the directives of Booker, as well as Sections 3553, 3661, and 3582 of Title 18, make it clear that sentencing courts may no longer consider the Guidelines alone in determining the appropriate sentence. With respect to *departures* from the Guideline range, in particular, following Booker courts need not justify sentences outside the Guidelines by citing factors that take the case outside the "heartland." Rather, as long as the sentence imposed is reasonable and supported by the factors outlined in Section 3553, courts may disagree with the range proposed by the Guidelines in individual cases and exercise their discretion.

**II.    UNDER ALL OF THE RELEVANT SENTENCING FACTORS, MR. KAMARA SHOULD RECEIVE A SENTENCE OF INCARCERATION OF TIME SERVED.**

A.    Statutory Provisions

Pursuant to the applicable statute, the maximum term of imprisonment for the offense at issue is 10 years.

B.    Advisory Sentencing Guidelines

(I).    *Applicable Guideline Range*

The Probation Office, consulting the 2005 edition of the Guidelines Manual, has concluded that the total offense level in this case is 6 and that Mr. Kamara's criminal history

3

category is I, resulting in an advisory Guideline range of 0-6 months.

### C.    Section 3553 Factors

As noted above, pursuant to 18 U.S.C. §§ 3562 and 3553(a) sentencing courts should consider the need for the sentence imposed 1) to reflect the seriousness of the offense, to promote respect for the law, and to provide just punishment for the offense; 2) to afford adequate deterrence to criminal conduct; 3) to protect the public from further crimes of the defendant; and 4) to provide the defendant with the needed educational and vocational training, medical care, or other correctional treatment in the most effective manner.

Section 3553(a) further directs sentencing courts to consider the nature and circumstances of the offense, the history and characteristics of the defendant, the range of sentences available, the need to avoid unwanted sentencing disparities among defendants with similar records who have been found guilty of similar conduct, and the need to provide restitution to any victims of the offenses charged. Specifically, courts should "impose a sentence sufficient, but not greater than necessary, to comply with the purposes" set forth above.

*I. Nature of the Offense*

While Mr. Kamara in no way wishes to diminish the seriousness of his offense, he notes that the crime to which he pled guilty was neither a crime of violence nor a drug-related offense. In fact, Mr. Kamara never intended to harm anyone, commit identity theft, or cause any other loss to any individual. He assumed a false identity with the sole intent to help himself assimilate into this foreign culture after fleeing civil war in his native Sierra Leone. Mr. Kamara has always worked hard to take care of himself. Notably, he has never been involved with drugs, guns, or

any other illegal activity to make ends meet, despite the enormous difficulties he has encountered as an immigrant to this country. On a relative scale, the nature of the offense is mild.

*II. Characteristics of the Defendant*

As indicated in the PSR, Mr. Kamara was born and raised in Freetown, Sierra Leone. His father died in a heart attack when he was young, and his mother died in 1997 as a result of the civil war in his native country. His two siblings met the same fate. Mr. Kamara endured much hardship during the war, including being captured and tortured by his government. After his entire family was dead, he was able to escape and flee to the United States, where he came to live with his aunt, Fatmatry Kamara.[1] Though he came to the United States as a refugee, the Immigration Office appears to have no record of his entry.[2]

Despite his heartwrenching past, Mr. Kamara was able to make a life for himself in the United States. In 2004 he married a woman named Maramar Gble, and they have a 17-month old daughter together. Though it is true that Mr. Kamara obtained a false identity, it is significant that he used that identity for good, not evil. That is to say, he used it so he could have access to education and employment. He completed training in engineering and low pressure boiling at a technical school in Virginia, and he also attended community college in Baltimore. Again, this

---

[1] Ms. Kamara currently resides in Maryland, and she has been a constant source of support for Mr. Kamara throughout this difficult period of incarceration. According to the PSR, Ms. Kamara characterizes Mr. Kamara as "a very quiet hard working person that doesn't cause problems," and she also stated that "he does not use drugs and has no bad habits." PSR at 7.

[2] The fact that ICE has no record of Mr. Kamara is odd, considering that his aunt, Fatmatry Kamara, bought him a plane ticket to come to the United States and he was successful in that venture. It seems that had Mr. Kamara not been granted refugee status, he would not have been allowed into the country when he arrived.

demonstrates Mr. Kamara's lack of malicious intent with respect to this offense. Furthermore, as is set forth in the PSR, Mr. Kamara has always been employed so that he can provide for his family, and he has never resorted to illegal activity to make ends meet.

*III. Appropriate Sentence*

Sentencing Mr. Kamara to a period of incarceration of time served would be completely consistent with all purposes of sentencing. First of all, Mr. Kamara's guidelines are 0-6 months. He has been in custody since December 21, 2006. Thus, on the date of sentencing, June 29, 2006, Mr. Kamara will already have served six months, the high end of his guideline range. Secondly, because there is a possibility that Mr. Kamara will be deported, it is entirely appropriate to give him a sentence of time served since his status as a deportable alien is likely to cause an increase in his confinement time. Finally, Mr. Kamara is a decent, good hearted individual who never intended to harm anyone, and he is deeply sorry for what he has done. The six months he has spent in prison have been more than adequate to punish him, and he should not be punished any further.

## **CONCLUSION**

For the reasons set forth above, as well as for any others the Court may deem fair and reasonable, Mr. Kamara asks the Court to sentence him to a period of incarceration of time served. Such a sentence would be sufficient, but not greater than necessary, to comply with the purposes set forth in 18 U.S.C. § 3553.

In light of his immigration status, Mr. Kamara will spend additional time in custody, following his sentence, pending deportation proceedings. A longer sentence of imprisonment in

this case would serve neither a deterrent nor a rehabilitative purpose.

                            Respectfully submitted,
                            A.J. Kramer
                            Federal Public Defender

                            _____/s/_____
                            Rita Bosworth
                            Assistant Federal Public Defender
                            625 Indiana Avenue, N.W.
                            Washington, D.C.  20004
                            (202) 208-7500 ext.126